IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LUIS ARIAS**, on behalf of himself and all other similarly situated employees, known and unknown,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>**THE FIFTY/50 MANAGEMENT GROUP, INC.** f/k/a Fifty/50 Management Group, Inc., an Illinois corporation,<br>**BRAVO TAPAS & LOUNGE, INC.**, an Illinois corporation,<br>**FIFTY/50 LLC**, an Illinois limited liability company,<br>**SCOTT A. WEINER**, individually, and<br>**GREGORY R. MOHR**, individually,<br><br>　　　　　　Defendants. | Civil Action<br><br><br><br>No.<br><br><br><br><br><br><br><br>JURY DEMAND |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, LUIS ARIAS, complains of the defendants THE FIFTY/50 MANAGEMENT GROUP, INC. f/k/a Fifty/50 Management Group, Inc. ("FIFTY, INC."), an Illinois corporation, BRAVO TAPAS & LOUNGE, INC. ("BRAVO"), FIFTY/50 LLC ("FIFTY, LLC"), an Illinois limited liability company, SCOTT A. WEINER ("WEINER"), individually, and GREGORY R. MOHR ("MOHR"), individually. Pleading hypothetically and in the alternative, the plaintiff alleges as follows:

### I.　INTRODUCTION

1.　This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the defendants' failure to pay overtime compensation

to the plaintiff, and to other similarly situated employees of the defendants (the "Putative Class"). The plaintiff routinely worked in excess of 40 hours per week for the defendants, but the defendants failed and refused to pay him time-and-one-half overtime compensation for the hours he worked in excess of 40 in given weeks as the FLSA requires.

2. Upon information and belief, the defendants routinely failed and refused to pay the Putative Class members time-and-one-half overtime compensation for the hours they worked in excess of 40 in given weeks as well, and continue this improper payroll practice through the present day. In Count I, the plaintiff brings claims under Section 216(b) of the FLSA.

3. In Count II the plaintiff brings supplemental claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*.

4. In Count III, the plaintiff brings supplemental claims under the Chicago Minimum Wage Ordinance ("CMWO"), 1-24-010 *et seq*.

## II. THE PARTIES

5. The plaintiff is an individual domiciled within Illinois and resides within the Northern District of Illinois.

6. The following defendants are individuals who, upon information and belief, are domiciled in Illinois and reside within the Northern District of Illinois: a) WEINER; and b) MOHR.

7. FIFTY, INC. is an Illinois corporation that maintains a registered office in Illinois at 190 S. LaSalle St., Suite 450, Chicago, IL 60603.

8. At all times relevant to this action, FIFTY, INC. maintained and maintains a principal place of business at or near 2047 W. Division St., Chicago, IL 60622.

9. At all times relevant to this action, the following defendants were and are corporate officers of FIFTY, INC.: a) WEINER; and b) MOHR.

10. At all times relevant to this action, upon information and belief, the following defendants held and hold an ownership interest in FIFTY, INC.: a) WEINER; b) MOHR and c) FIFTY, LLC.

11. At all times relevant to this action, the following defendants exercised and exercise significant control over FIFTY, INC.'s day-to-day affairs including its human resources and payroll function: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

12. At all times relevant to this action, the following defendants had and have the power to hire and fire FIFTY, INC.'s employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

13. At all times relevant to this action, the following defendants had and have the power to set the pay rates of FIFTY, INC.'s employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

14. At all times relevant to this action, the following defendants had and have the power to set the work schedules of FIFTY, INC.'s employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

15. BRAVO is an Illinois corporation that maintains a registered office in Illinois at 190 S. LaSalle St., Suite 450, Chicago, IL 60603.

16. At all times relevant to this action, BRAVO maintained a principal place of business at or near 2047 W. Division St., Chicago, IL 60622.

17. At all times relevant to this action, BRAVO was and is the holder of three Chicago business licenses, which licenses are identified in Chicago's business license database under the following numbers: a) 2,357,141; b) 2,357,142; and c) 2,388,515.

18. The three business licenses identified in the preceding paragraph are each associated with: a) 2047 W. Division St., Chicago, IL 60622; and b) the assumed name "The Fifty/50".

19. Chicago business license number 2,357,141 is a license for "Retail Sales of Perishable Foods"; Chicago business license number 2,357,142 is a license for "Consumption of Liquor on Premises"; and Chicago business license number 2,388,515 is a license for "Sal of Liquor Outdoors on Private Property".

20. At all times relevant to this action, the following defendants were and are corporate officers of BRAVO: a) WEINER; and b) MOHR.

21. At all times relevant to this action, upon information and belief, the following defendants held and hold an ownership interest in BRAVO: a) WEINER; b) MOHR and c) FIFTY, LLC.

22. At all times relevant to this action, the following defendants exercised and exercise significant control over BRAVO's day-to-day affairs including its human resources and payroll function: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

23. At all times relevant to this action, the following defendants had and have the power to hire and fire BRAVO's employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

24. At all times relevant to this action, the following defendants had and have the power to set the pay rates of BRAVO's employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

25. At all times relevant to this action, the following defendants had and have the power to set the work schedules of BRAVO's employees including, as applicable, the plaintiff and the Putative Class members: a) WEINER; b) MOHR and c) upon information and belief, FIFTY, LLC.

### III. JURISDICTION AND VENUE

26. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

27. Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

28. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within the Northern District of Illinois.

### IV. STATUTORY CONSENT

29. The plaintiff brings this case as an opt-out collective action under the FLSA on behalf of himself and the Putative Class, and in accord with Section 16(b) of the FLSA,

the plaintiff has given written consent to bring such an action (attached hereto as **Exhibit A**).

V. **GENERAL ALLEGATIONS**

30. At all times relevant to this action, the defendants were the plaintiff's "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

31. At all times relevant to this action, the defendants were and are the Putative Class members' "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the defendants acted/act directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

32. At all times relevant to this action, the defendants were the plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the defendants acted directly or indirectly in the interest of the "employer" in relation to the plaintiffs, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

33. At all times relevant to this action, the defendants were the plaintiff's "employer" within the meaning of Section 1-24-010 of the CMWO in that the defendants acted directly or indirectly in the interest of the "employer" in relation to the plaintiffs, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

34. At all times relevant to this action, the plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA in that, among other things, the defendants allowed him to perform work for the defendants' benefit.

35. At all times relevant to this action, the Putative Class members were and are "employee[s]" of the defendants within the meaning of Section 3(e)(1) of the FLSA in that, among other things, the defendants allowed them to perform work for the defendants' benefit.

36. At all times relevant to this action, the plaintiff was an "employee" of the defendants within the meaning of Section 3(d) of the IMWL in that, among other things, the defendants allowed him to perform work for the defendants' benefit.

37. At all times relevant to this action, the plaintiff was an "employee" of the defendants within the meaning of 1-24-010 of the CMWO in that, among other things, the defendants allowed him to perform work for the defendants' benefit.

38. At all times relevant to this action, the defendants owned and operated, and own and operate, a food service establishment that includes a liquor bar, commonly known as "The Fifty/50" at or near 2047 W. Division St., Chicago, IL 60622, and at which the plaintiff was employed.

39. Upon information and belief, FIFTY, INC. had gross receipts in excess of $500,000.00 in: a) 2011; b) 2012; c) 2013; d) 2014; e) 2015; f) the twelve-month period between and including April 1, 2015 and March 31, 2016; g) the twelve-month period between and including July 1, 2015 and June 30, 2016; and h) the twelve-month period between and including October 1, 2015 and September 30, 2016.

40. Upon information and belief, FIFTY, LLC had gross receipts in excess of $500,000.00 in: a) 2011; b) 2012; c) 2013; d) 2014; e) 2015; f) the twelve-month period between and including April 1, 2015 and March 31, 2016; g) the twelve-month period between and including July 1, 2015 and June 30, 2016; and h) the twelve-month period between and including October 1, 2015 and September 30, 2016.

41. Upon information and belief, BRAVO had gross receipts in excess of $500,000.00 in: a) 2011; b) 2012; c) 2013; d) 2014; e) 2015; f) the twelve-month period between and including April 1, 2015 and March 31, 2016; g) the twelve-month period between and including July 1, 2015 and June 30, 2016; and h) the twelve-month period between and including October 1, 2015 and September 30, 2016.

42. During the course of his employment by the defendants, the plaintiff handled goods that moved in interstate commerce including but not limited to canned and bottled beverages, and perishable food products.

43. During the course of their employment by the defendants, the Putative Class members handled and handle goods that moved in interstate commerce including but not limited to canned and bottled beverages, and perishable food products.

44. During the course of their employment by the defendants, the plaintiff and the Putative Class members were and, as applicable, are not exempt from the minimum wage and maximum hour provisions of the FLSA.

45. During the course of their employment by the defendants, the plaintiff was not exempt from the minimum wage and maximum hour provisions of the IMWL.

46. The plaintiff was employed by the defendants from about September 1, 2012 through about March 12, 2016.

47.     During the period that the plaintiff was employed by the defendants, the defendants allowed him to work as a stocker or, as the position is commonly known in the industry, a "barback."

48.     The plaintiff was a tipped employee in that he received more than $30.00 per month in tips from the defendants' customers as part of an employee tip pool; and the minimum wage rates applicable to the plaintiff under the FLSA, the IMWL and the CMWO were the "minimum cash wage" rates under those laws.

49.     Throughout the term of the plaintiff's employment by the defendants, the plaintiff worked more than 40 hours in most, if not all, of the weeks that he was employed by the defendants.

50.     For the most part, when the plaintiff was employed by the defendants, the number of hours he worked each week fluctuated between 42 and 64.

51.     Although the actual number of hours he worked each week fluctuated, the plaintiff worked an average of 56 hours per week for the defendants.

52.     From about September, 2012, through about May 29, 2013, the defendants paid the plaintiff on an hourly basis, at the rate of $4.95 per hour; however, during this time period the defendants paid the plaintiff at this straight rate of $4.95 for both his regular (40 and under in any given week) hours and his overtime (in excess of 40 in any given week) hours – the defendants failed to pay the plaintiff at the time and one-half rate[1] for his overtime hours.

---

[1] The overtime rate for tipped employees must be calculated using a straight rate of not less than the applicable minimum wage, not the minimum cash wage. Thus, for example, under the IMWL the lowest allowable rate for overtime hours is $9.08 [($8.25 x 1.5) - $3.30] and not $7.43 [$4.95 x 1.5].

53. From about May 30, 2013, through about August 5, 2015, the defendants paid the plaintiff on an hourly basis, at the rate of $6.50 per hour; however, during this time period the defendants paid the plaintiff at this straight rate of $6.50 for both his regular (40 and under in any given week) hours and his overtime (in excess of 40 in any given week) hours – the defendants failed to pay the plaintiff at the time and one-half rate for his overtime hours.

54. From about August 6, 2015, through about March 12, 2016 (the "Final Period"), even though the plaintiff's work as a barback did not qualify him to be an exempt employee under the FLSA, the IMWL and/or the CMWO, the defendants paid the plaintiff a fixed salary; and the defendants paid the plaintiff a fixed salary during the Final Period even though his work hours continued to fluctuate, between about 42 per week and 64 per week, as described above.

55. During the Final Period, there was a "clear mutual understanding of the parties that the fixed salary [was] compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 CFR § 778.114(a).

56. Because "the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." *Id*.

57. The fixed weekly salaries that the defendants paid the plaintiff during the Final Period could not have included overtime premiums. If the defendants had paid overtime

premiums to the plaintiff, his weekly compensation would have increased and decreased in a manner that tracked the fluctuation in the number of overtime hours he worked each week, but it did not.

58. If the defendants had paid the plaintiff overtime premiums in compliance with the FLSA, the IMWL and the CMWO, his weekly compensation would have increased and decreased in a manner that tracked the fluctuation in the number of overtime hours he worked each week because, when a fixed weekly salary is paid to nonexempt employees who work fluctuating hours, as is the case here, "[p]ayment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement." 29 CFR § 778.114(a).

59. The Putative Class consists of employees who worked and, as applicable, work as barbacks, servers, cooks, bartenders, hosts and other nonexempt positions, whom the defendants failed to pay overtime compensation at the time and one-half rate.

## COUNT I
### (Violation of the FLSA)

60. The plaintiff re-alleges the foregoing paragraphs.

61. Among other ways, the defendants violated the FLSA by:

   a. failing to pay the plaintiff for the overtime (in excess of 40 in any given workweek) hours he worked a rate equal to or greater than one and one-half times the hourly rate at which he was employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

   b. failing to provide the plaintiff with pay stubs that accurately listed the number of hours he worked each week during the Final Period; and

    c. failing to provide the plaintiff with pay stubs that accurately listed his hourly rates of pay during the Final Period.

62. Upon information and belief, the defendants also violated the FLSA by:

    a. failing to pay the Putative Class members for the overtime hours they worked/work at a rate equal to or greater than one and one-half times the hourly rate at which they were employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

    b. failing to provide the Putative Class members with pay stubs that accurately listed the number of hours they worked/work each week; and

    c. failing to provide the Putative Class members with pay stubs that accurately listed/list their hourly rates of pay.

63. The defendants' violation of the FLSA was willful in that the defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

64. The defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

65. As a direct and proximate result of the defendants' violation of the FLSA as described above, the plaintiff was damaged in that he suffered pecuniary loss.

66. As a direct and proximate result of the defendants' violation of the FLSA as described above, the Putative Class members were damaged in that they suffered pecuniary loss; and the Putative Class members continue to suffer pecuniary loss as a direct and proximate result of the defendants' ongoing violation of the FLSA.

WHEREFORE, on behalf of himself and the Putative Class, the plaintiff prays for judgment in his favor and against the defendants, and each of them, and for the following relief:

    A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the defendants failed to pay the plaintiffs at rates equal to or greater than one and one-half times the regular rates at which the plaintiffs were employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

    B. statutory liquidated damages as allowed by the FLSA;

    C. interest on all amounts awarded;

    D. attorneys' fees, together with costs of suit and collection; and

    E. such further relief as may be fair and just in the premises.

## COUNT II
## (Violation of the IMWL)

67. The plaintiff re-alleges the foregoing paragraphs.

68. Among other ways, the defendants violated the IMWL by:

    a. failing to pay the plaintiff for the overtime (in excess of 40 in any given workweek) hours he worked a rate equal to or greater than one and one-half times the hourly rate at which he was employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

    b. failing to provide the plaintiff with pay stubs that accurately listed the number of hours he worked each week during the Final Period; and

    c. failing to provide the plaintiff with pay stubs that accurately listed his hourly rates of pay during the Final Period.

69. The defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

70. The defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

71. As a direct and proximate result of the defendants' violation of the IMWL as described above, the plaintiff was damaged in that he suffered pecuniary loss.

WHEREFORE, the plaintiff prays for judgment in his favor and against the defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the defendants failed to pay the plaintiffs at rates equal to or greater than one and one-half times the regular rates at which the plaintiffs were employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

B. statutory penalties as allowed by the IMWL;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

### COUNT III
### (Violation of the CMWO)

72. The plaintiff re-alleges the foregoing paragraphs.

73. Among other ways, the defendants violated the CMWO by:

a. failing to pay the plaintiff for the overtime (in excess of 40 in any given workweek) hours he worked a rate equal to or greater than one and one-half times the hourly rate at which he was employed (in no case less than one and one-half times the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest, minus any applicable tip credit);

b. failing to pay the plaintiff at a rate not less than the Chicago minimum cash wage;

c. failing to provide the plaintiff with pay stubs that accurately listed the number of hours he worked each week during the Final Period; and

      d. failing to provide the plaintiff with pay stubs that accurately listed his hourly rates of pay during the Final Period.

74. The defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

75. The defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

76. As a direct and proximate result of the defendants' violation of the CMWO as described above, the plaintiff was damaged in that he suffered pecuniary loss.

WHEREFORE, the plaintiff prays for judgment in his favor and against the defendants, and each of them, and for the following relief:

   A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiff for each hour the plaintiff worked in excess of 40 in any given week, but for which the defendants failed to pay the plaintiff at a rate equal to or greater than one and one-half times the regular rate at which the plaintiff was employed (in no case less than the applicable federal, Illinois or Chicago minimum hourly rates, whichever is highest);

   B. damages in an amount equal to the unpaid minimum wages due and owing to the plaintiff for each hour the plaintiff worked, but for which the defendants failed to pay the plaintiff at a rate equal to or greater than the CMWO's minimum cash wage.

   C. statutory treble damages as allowed by the CMWO;

   D. interest on all amounts awarded;

   E. attorneys' fees, together with costs of suit and collection; and

   F. such further relief as may be fair and just in the premises.

## JURY DEMAND

The plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

                Respectfully submitted,

                /s/Paul Luka
                One of the Plaintiff's Attorneys


Paul Luka
Law Office of Paul Luka, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 971-7309
paul@lukapc.com

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages the Law Office of Paul Luka, P.C., to pursue his/her claims for unpaid wages, and other relief, against The Fifty/50 Management Company, Inc., and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

*Luis Arias*
LUIS ARIAS